**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Erika Jacobs,** | **Case No. 4:24CV793** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge Jennifer Dowdell Armstrong** |
| **Mercy Health St. Joseph Warren Hospital,** | |
| **Defendant.** | **MEMORANDUM OPINION & ORDER** |

Currently pending are *pro se* Plaintiff Erika Jacobs's (1) Objection to the Report & Recommendation ("R&R") of Magistrate Judge Jennifer Dowdell Armstrong that this matter be dismissed without prejudice for failure to prosecute (Doc. No. 47); (2) Objection to Defendant Mercy Health St. Joseph Warren Hospital's Motion for Leave to File Motion to Compel *Instanter* (Doc. No. 48); (3) Motion to Recuse Magistrate Judge Armstrong (Doc. No. 49); and (4) "Motion for a Response" (Doc. No. 55.)

For the following reasons, the Court declines to adopt the R&R. (Doc. No. 44.) Plaintiff's Objection to Defendant's Motion for Leave to File Motion to Compel *Instanter* (Doc. No. 48) is denied as moot. Plaintiff's Motion to Recuse (Doc. No. 49) is denied and her Motion for a Response (Doc. No. 55 ) is denied as moot.

I.     **Relevant Background[1]**

       A.     **The Pleadings and Case Management Conference**

---

[1] The Court has set forth the full procedural history of this matter in several previous Memorandum Opinions & Orders (Doc. Nos. 33, 37) and will not repeat this information herein. Familiarity with this Court's Orders is presumed.

Plaintiff Erika Jacobs ("Plaintiff" or "Jacobs") filed a *pro se* Complaint and Motion for Leave to Proceed *In Forma Pauperis* in the United States District Court for the Southern District of Ohio on May 2, 2024.  (Doc. No. 1, 4.)  Jacobs's filings indicated a mailing address of 3700 Avenue B, Scottsbluff, Nebraska.  (Doc. No. 4 at PageID# 2.)  The Southern District of Ohio transferred the case to this Court, where it was assigned to the undersigned.  (Doc. No. 2.)

In her Complaint, Jacobs alleges that, in July 2023, she relocated from Chicago, Illinois to Warren, Ohio to accept a position as a "Technologist" at Defendant Mercy Health St. Joseph Warren Hospital ("Defendant" or "Mercy Health").  (Doc. No. 4 at PageID# 18.)  Jacobs alleges that she was on time for work the majority of the time but that she was tardy on a couple of occasions due to difficulty obtaining transportation.  (*Id*.)  Jacobs alleges that her supervisors told her "it was ok" and "not to worry about it."  (*Id*.)  On August 17, 2023, however, Jacobs was given a written "write up" for tardiness.  (*Id*. at PageID# 6.)  Jacobs alleges that her supervisor, Mike Mace, "brought the Plaintiff in for a written write up in retaliation for her requesting CAP surveys be done after training in all departments of the laboratory and for her statement to the Hematology manager about the unfairness of the Hematology training module."  (*Id*.)  Jacobs further alleges that "based on the grounds that [she] was African American, [she] was declared unjustly insubordinate."  (*Id.*)  Jacobs alleges that, rather than a written write up, she should have been given a verbal warning.  (*Id*.)  Instead, Jacobs was fired on August 17, 2023 and escorted out of the building by the police.  (*Id.*)  Although not entirely clear, it appears that Jacobs is alleging claims for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  (*Id*. at PageID# 4.)

On June 24, 2024, the undersigned referred the instant action to Magistrate Judge Armstrong for general pretrial supervision, including overseeing service, conducting a Case Management

2

Conference, overseeing the discovery process, and resolving all non-dispositive motions.  (Doc. No. 7.)  On that same date, Judge Armstrong granted Jacobs's Motion to Proceed *In forma Pauperis*. (Doc. No. 6.)

On September 4, 2024, Judge Armstrong conducted a Case Management Conference ("CMC"), in which Jacobs and counsel for Defendant participated.  (Doc. No. 12.)  Judge Armstrong thereafter issued a CMC Order, in which she assigned the case to the Standard Track and set the following deadlines: (1) initial disclosures to take place on October 11, 2024; (2) pleadings to be amended by November 25, 2024; (3) motions directed at the pleadings to be filed by November 25, 2024; (4) fact discovery to be completed by April 30, 2025; (5) expert discovery to be completed by April 30, 2025; and (6) dispositive motions to be filed by May 30, 2025.  (*Id*.)  Judge Armstrong also set a Zoom status conference for March 31, 2025.  (*Id*. at PageID# 55.)

In addition, in her CMC Order, Judge Armstrong expressly advised the parties that: "Discovery disputes shall be governed by the dictates of Local Rule ("LR") 37.1.  The parties are also put on notice that the court interprets any certification pursuant to LR 37.1(a)(1) will mean that the party seeking disputed information has actually talked to the opposing party.  No motions pertaining to discovery disputes may be filed without prior authorization from the court."[2]  (*Id*. at PageID# 55.)

---

[2] During the conference, Magistrate Judge Armstrong noted that "Defendant did not agree to waive service" and ordered that "[c]onsistent with Fed. R. Civ. P. 4(c)(3), an original summons will be issued to the U.S. Marshal for service upon Defendant."  See Minutes dated Sept. 4, 2024. The docket reflects that the Court issued the original summons to the U.S. Marshal for service upon Defendant that same day.  (Doc. No. 11.)  On November 8, 2024, the U.S. Marshal filed a Return of Service executed on Defendant via FedEx.  (Doc. No. 21.)  Jacobs thereafter filed several Motions expressing concern regarding whether service was proper, and seeking clarification that the Marshal had properly served Defendant. *See, e.g.*, Doc. Nos. 22, 24, 27.  Magistrate Judge Armstrong denied Jacobs's Motions as moot on the grounds that "Defendant has not filed a motion challenging the sufficiency of process or any deficiency relating to Plaintiff's discovery responses, and the Court cannot issue an advisory opinion on matters not pending before the Court."  *See* Non-Doc Orders dated Jan. 10, 2025.  *See also* Non-Doc. Order dated Jan. 21, 2025.

Defendant thereafter filed its Answer on October 10, 2024.  (Doc. No. 13.)   On October 25, 2024, Jacobs filed a Motion for permission to file electronically.  (Doc. No. 17.)  Judge Armstrong granted the Motion on October 29, 2024 and instructed Jacobs to complete the necessary electronic filing registration form.  (Doc. No. 20.)  Jacobs did so and was thereafter able to electronically file documents in this matter. In addition, by virtue of having been granted permission to file electronically, Jacobs automatically received email notifications of all filings in this case, including Court Orders and Notices.

### B.      Written Discovery and Jacob's four Motions to Recuse

The docket reflects that the parties proceeded to engage in written discovery.  In October 2024, the parties filed Notices of Service of their respective Initial Disclosures.  (Doc. Nos. 15, 16, 19.)  The following month, on November 26, 2024, Defendant filed a Notice of Service of its First Set of Requests for Production of Documents and Requests for Admission.  (Doc. No. 23.) On December 24, 2024, Jacobs filed a Notice that she had "submitted her answers and a portion of the production of documents to the Defendant via electronic submission/email." (Doc. No. 26.)  Jacobs also filed a Notice of Service of her First Set of Interrogatories, Request for Production of Documents, and Request for Admissions to Defendant on December 23, 2024, followed by a Notice of Service of her Second Set of Interrogatories on January 23, 2025.  (Doc. Nos. 25, 29.)

On January 26, 2025, Jacobs filed her first "Motion to Remove Magistrate Judge Jennifer Dowdell Armstrong as Presiding Judge over the Case."  (Doc. No. 30.)  On February 20, 2025, the undersigned issued a Memorandum Opinion & Order denying Jacobs's Motion on several grounds. (Doc. No. 33.)  Of particular note, the Court explained that "[t]he fact that a litigant disagrees with the legal rulings in the case … does not establish that the court's decisions are the product of bias."

(*Id.* at p. 6) (citing *Shepard v. United States*, 2009 WL 3106554 at \*2–3 (E.D. Mich. Sept.18, 2009)). The Court further noted that "[t]he subjective view of the party involved is not sufficient to support a recusal motion, no matter how strongly that view may be held." (*Id.*) (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989)).  The Court made it clear that "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" (*Id.*) (quoting *Wilson v. Parker*, 515 F.3d 682, 701 (6th Cir. 2008)).

On February 19, 2025, Jacobs filed a Motion to Compel Discovery.  (Doc. No. 31.)  Therein, Jacobs asserted that Defendant failed to timely produce documents in response to her Request for Production and, further, had produced "confidential information that has no relevance to the case," including her resume, background check, and an excerpt from her license application.  (*Id.*)  Notably, Jacobs did not certify that she had spoken with defense counsel in an attempt to resolve the dispute, as required by Judge Armstrong's CMC Order.

On February 20, 2025, Judge Armstrong denied Jacobs's Motion to Compel without prejudice on the grounds that she had failed to comply with the CMC Order and Local Rule 37.1.  *See* Non-Doc. Order dated Feb. 20, 2025.  Specifically, Judge Armstrong found that "Plaintiff's Motion to Compel contains no certification that the parties have actually talked to each other about the discovery dispute and Plaintiff failed to obtain prior authorization from the Court before filing her Motion to Compel." (*Id.*)

Later that same day, Jacobs filed her second Motion to Recuse, this time seeking to recuse both Judge Armstrong and the undersigned.  (Doc. No. 35.)  Jacobs accused Judge Armstrong of "unethical discrimination against every motion filed" and asserted that "it is obvious that the judge is prejudice[d] against the Plaintiff and hates her in a way unknown." (*Id.*)  Jacobs argued that "it is

5

apparent … that [] Judge Pamela Barker and Jennifer Dowdell [sic] are conspiring together against the Plaintiff and this is unconstitutional." (*Id*.)  On that same day, Jacobs filed an Objection to Judge Armstrong's denial without prejudice of her Motion to Compel, in which she asserted that she had complied with Judge Armstrong's CMC Order.  (Doc. No. 36.)

On February 28, 2025, the undersigned issued a Memorandum Opinion & Order denying Jacobs's second Motion to Recuse and her Objection.  (Doc. No. 37.)  In addition, the Court reminded Jacobs that an attorney or unrepresented party must have a good faith basis for filing motions in this Court.  (*Id.* at PageID# 129.)  The Court noted that "Plaintiff has filed two Motions for Recusal based solely on the fact that she is unhappy with the Court's rulings" and remarked that "[t]he Court has now repeatedly advised Plaintiff that this is not, standing alone, a sufficient basis for recusal."  (*Id*.) The Court cautioned Jacobs "if she continues to file unsupported motions for recusal based solely on her disagreement with the Court's rulings, the Court will consider withdrawing her electronic filing privileges and/or imposing filing restrictions."  (*Id*.)

Shortly thereafter, on March 9, 2025, Jacobs filed her third Motion to Recuse, again seeking the recusal of both Judge Armstrong and the undersigned.  (Doc. No. 38.)  On March 11, 2025, the undersigned denied Jacobs's third Motion to Recuse for the reasons set forth in this Court's previous Memorandum Opinion & Orders.  *See* Non-Doc. Order dated March 11, 2025.  In addition, the Court again expressly warned Jacobs that "her electronic filing privileges will be withdrawn if she files any future recusal motions that are based solely on her disagreement with the Court's rulings."  (*Id*.)

On March 25, 2025, Jacobs filed her fourth Motion to Recuse, as well as another Objection to Judge Armstrong's denial without prejudice of her Motion to Compel.  (Doc. Nos. 39, 40.)  On March 28, 2025, Judge Armstrong construed Jacobs's Motion and Objection as Motions for

Reconsideration, and denied them both.  *See* Non-Doc. Order dated March 28, 2025.  In addition, and "based upon Plaintiff's continued apparent unwillingness and/or inability to comply with the clear instructions of this Court and applicable rules of civil procedure," Judge Armstrong withdrew Jacobs's electronic filing privileges.  *Id.*

Thus, as of March 28, 2025, Jacobs no longer had the ability to electronically file any documents in this action.  In addition, because she no longer had electronic filing privileges, Jacobs no longer received automatic email notifications of filings in this action.  Rather, all filings and notices (including Court filings and notices) were required to be mailed to Jacobs via regular mail. Although Jacobs did not file a change of address form or otherwise properly notify this Court that she had changed addresses,[3] the docket reflects that her fourth Motion to Recuse included a new mailing address of P.O. Box 28192, Kansas City, MO.  (Doc. No. 40 at PageID# 142.)  The docket reflects that the Court thereafter mailed copies of Court filings and notices to Jacobs at this Kansas City, MO address.

### C.     Jacobs fails to Appear for a Status Conference, Show Cause Hearing, or her Deposition

As noted *supra,* in her CMC Order, Magistrate Judge Armstrong set a Zoom status conference for March 31, 2025.  (Doc. No. 12 at PageID# 55.)  On that date, Judge Armstrong and counsel for

---

[3] Like all litigants, Jacobs has had an affirmative duty throughout this litigation to provide her current mailing address to the Court and to promptly notify this Court of any change in her mailing address.  *See, e.g., Barber v. Runyon,* 1994 WL 163765, at *1 (6th Cir. May 2, 1994) ("If [*pro se* plaintiff's] address changed, he had an affirmative duty to supply the court with notice of any and all changes in his address."); *Washington v. Ohio*, 2024 WL 4664709, at *2 (N.D. Ohio Nov. 4, 2024) ("*Pro se* litigants have the same obligation as an attorney to notify the court of a change of address."); *Mann v. Heartland Behavioral Healthcare*, 2025 WL 3693586 at * 1 (N.D. Ohio Dec. 19, 2025) (noting that "petitioner has an affirmative duty to notify the Court of any change in his address and his failure to do so further justifies dismissal."), *adopted by* 2026 WL 49926 (N.D. Ohio Jan. 7, 2026).

Defendant appeared for the status conference but Jacobs did not. Judge Armstrong then issued the following non-doc Order:

> This Court's 9/5/2024 Case Management Order set a Zoom status conference on 3/31/2025 at 10:00 a.m., and the docket also reflects that the Zoom status conference would take place on 3/31/2025 at 10:00 a.m. (ECF No. 12 .) The Case Management Order further provided that the Court would provide dial-in instructions to the parties. On 9/5/2024, chambers emailed the parties a Zoom link for the status conference; however, due to a typographical error, the date of the Zoom link was 5/31/2025 rather than 3/31/2025. In accordance with the docket, which reflects that the status conference was set for 3/31/2025 (ECF No. 12 ), the Court and Defendant's counsel appeared in the Zoom waiting room at 10:00 a.m. on 3/31/2025. Plaintiff, however, failed to appear on 3/31/2025 by 10:15 a.m. Due to Plaintiffs failure to appear, the status conference did not take place. **Because the Court acknowledges that the typographical error contained in the Zoom link may have caused confusion, the Court hereby RESETS the status conference to 4/16/2025 at 9:00 a.m. Plaintiff is hereby on notice and expressly warned that if she fails to appear at the re-set Zoom status conference on 4/16/2025 at 9:00 a.m. that the Court will consider recommending the issuance of sanctions, including the dismissal of this action**. *See Bowles v. City of Cleveland*, 129 Fed. App'x 239, 2005 WL 953853 (6th Cir. 2005).

(Non-Doc. Order dated March 31, 2025) (emphasis added). A copy of the above Order and the videoconference access information were mailed to Jacobs at her Kansas City, MO address on that same date, and were not returned undeliverable.

On April 16, 2025, Judge Armstrong and counsel for Defendant appeared for the rescheduled Zoom status conference but, again, Jacobs did not appear. (Doc. No. 42.) Judge Armstrong issued an Order to Show Cause, which provided in relevant part as follows:

> Plaintiff's absences have delayed and hindered the orderly progression of this case. Accordingly, it is hereby ORDERED that Plaintiff shall appear before this Court via Zoom on May 1, 2025 at 9:00 a.m. to show cause why this Court should not recommend sanctions – including but not limited to dismissal of the case with prejudice, monetary penalties, or any other appropriate sanction – for failure to comply with court orders and appear as required. The Court will separately provide the parties with Zoom dial-in instructions. Plaintiff is on notice that failure to appear at the show cause hearing may result in the recommendation of immediate sanctions, including dismissal of this action with prejudice.

(*Id*. at PageID# 148.)   A copy of the Order to Show Cause and the video conference access information were mailed to Jacobs at her Kansas City, MO address on that same date, and were not returned undeliverable.

On April 29, 2025, Defendant filed a Motion for Leave to File Motion to Compel *Instanter*. (Doc. No. 43.)  Therein, Defendant explained that it had noticed Jacobs's deposition for April 29, 2025 via Zoom and had indicated that the deposition would be recorded by audiovisual means.  (*Id*.) Defendant asserted that Jacobs "insist[ed] the deposition proceed by telephone with no video or recording," which was not acceptable to Defendant.  (*Id*. at PageID# 149.)  Defendant certified that it had made "repeated sincere, good faith efforts to resolve the instant discovery dispute," including requesting that Jacobs meet and confer regarding discovery issues on April 21, 22, and 24, 2025.  (*Id*.) According to Defendant, however, Jacobs "refused or failed to respond to each request to meet and confer."  (*Id*.)  In its attached Motion to Compel, Defendant asked that the Court (1) compel Jacobs to sit for a deposition, either in-person or via Zoom with her camera on, to be recorded by stenographic and audiovisual means as noticed; (2) extend the current discovery deadline to May 15, 2025, to allow time for Jacobs's deposition; and (3) award sanctions, including costs. (Doc. No. 43-1.)

On April 30, 2025, Magistrate Judge Armstrong set a Zoom Discovery Conference for May 1, 2025 at 9:00 a.m., i.e., at the same time as the previously set Show Cause Hearing.  *See* Non-Doc. Order dated April 30, 2025.  On May 1, 2025, Judge Armstrong and counsel for Defendant appeared for the Zoom Show Cause Hearing and Discovery Conference, but Jacobs did not appear.  *See* Non-Doc Order dated May 1, 2025.  Magistrate Judge Armstrong "reiterate[d] that Plaintiff's absences have delayed and hindered the orderly progression of the case and will take this matter under

advisement." *Id*. Copies of Judge Armstrong's April 30, 2025 and May 1 2025 Orders were timely mailed to Jacobs at her Kansas City, MO address.

The docket reflects that Jacobs failed, at any point in time prior to Magistrate Judge Armstrong's April 16, April 30, and/or May 1, 2025 Orders, to file a Notice of Address Change in this action.

### D.    Report & Recommendation and Objections (Doc. Nos. 44, 47, 48)

On May 7, 2025, Judge Armstrong issued an R&R, in which she recommended that the undersigned dismiss the instant action without prejudice for failure to prosecute. (Doc. No. 44.) After setting forth a condensed version of the above procedural history, Judge Armstrong applied the four factor test for dismissal for failure to prosecute set forth in *Mulbah v. Detroit Board of Education*, 261 F.3d 586 (6th Cir. 2001)[4] and found that all four factors weighed in favor of dismissal. (*Id.* at PageID#s 171-174.) However, "mindful that [Jacobs] is proceeding *pro se* and that she has, by and large, actively participated in the case," Judge Armstrong recommended that the dismissal be without prejudice. (*Id.* at PageID# 174.) Lastly, in light of her recommendation that the instant action be dismissed without prejudice, Judge Armstrong denied Defendant's Motion to Compel without prejudice as moot. (*Id*. at PageID#s 174-175.) She noted that, "if the Court declines to adopt my recommendation that the case be dismissed, [Defendant] may renew its motion to compel." (*Id*.) Objections were due within fourteen days, i.e., by no later than May 21, 2025.

---

[4] In *Mulbah,* the Sixth Circuit directed district courts to consider the following four factors in evaluating whether dismissal for failure to prosecute is appropriate: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Mulbah,* 261 F.3d at 589.

10

The docket reflects a copy of Judge Armstrong's R&R was mailed to Jacobs at her Kansas City, MO address on May 7, 2025.  However, later that same day, the Clerk's Office received returned mail, indicating that the copies of Judge Armstrong's April 30, 2025 and May 1, 2025 Orders that had been mailed to Jacobs at her Kansas City, MO were "returned to sender."  (Doc. Nos. 45, 46.) The "return to sender" stamp on the returned envelopes indicated a different mailing address for Jacobs of P.O. Box 271, Blue Springs, MO.  (*Id*.)

On May 28, 2025, Jacobs filed a "Motion to Object [to] Order Received on 5-21-25 for Sanctions and Dismissal of Case."  (Doc. No. 47.)  Therein, Jacobs argues that she "never received any order or any proceedings request scheduling a status conference on 3-31-25, 4-16-25, and 5-1, 25."  (*Id.*)  Jacobs asserts that her "email is on file with the court and the court can email the Plaintiff any orders needed for the court case but has chosen not to do so in malice."  (*Id*.)  Jacobs maintains that Judge Armstrong "threatened the Plaintiff with sanctions that are unwarranted and [are] in retaliation for" Jacobs's complaints about Judge Armstrong's allegedly "unethical judicial conduct." (*Id.*)  She accuses Judge Armstrong of continuing to "display unethical conduct" and being "very deceptive and racial."  (*Id*.)  In addition, Jacobs asserts that Judge Armstrong's willingness "to discuss" Defendant's Motion to Compel while refusing to consider Jacobs's Motion to Compel constitutes "racism at it's [sic] worst."  (*Id*.)  Lastly, Jacobs maintains that Judge Armstrong was intentionally failing to notify her of upcoming conferences and hearings in retaliation for Jacobs's many Motions to Recuse.  (*Id*.)

Two days later, on May 30, 2025, Jacobs filed a "Motion to Object for Leave to File Motion to Compel *Instanter* filed by the Defendant's Attorneys."  (Doc. No. 48.)  Therein, Jacobs argues that she "did not disagree to take a deposition."  (*Id.*)  Rather, Jacobs maintains that she requested her

11

deposition be conducted via telephone by a stenographer, asserting that she "has the right to make the request."  (*Id*.)  Jacobs argues that neither "the court nor the Defendant's attorney can force the Plaintiff into being videotaped or audio recorded against her will, when there is another method more accustomed by law for the deposition:  stenographer."  (*Id*.)

In conclusion, Jacobs states as follows: "If there are any scheduled conferences the Plaintiff needs to be made aware of them ahead of time.  The Plaintiff completed the form requesting orders be emailed to her, this form is on file with the court.  Yet, the court has chosen to go against the Plaintiff's request and mail the orders.  The Plaintiff received only one order dated on the envelope for 5-13-25, this is long past the conference date(s)."  (*Id*. at PageID# 188.)

### E.  Fifth Motion to Recuse (Doc. No. 49)

On June 3, 2025, Jacobs filed her fifth Motion to Recuse.  (Doc. No. 49.)  She asserts that her request is "due to unethical behavior and bias of both judges" and requests that her motion be reviewed "by the Chief Judge."  (*Id*.)  She states that she requested that "all orders are to be sent [to her] via email" and accuses Magistrate Judge Armstrong of maliciously failing to do so in retaliation for Jacobs's Motions to Recuse and complaints of alleged judicial misconduct.  (*Id*.)  She also asserts that Judge Armstrong "has no respect for [her] because she is a *pro-se* African American litigant" and requests that Judge Armstrong be removed from the case immediately.  (*Id*.)

### F.  Interlocutory Appeal

On June 11, 2025, Jacobs filed an Interlocutory Appeal with the Sixth Circuit Court of Appeals.  (Doc. No. 50.)   The Sixth Circuit dismissed Jacobs's appeal on August 15, 2025 for lack of jurisdiction.  (Doc. No. 51.)  On October 21, 2025, Jacobs filed a motion for extension of time to file for petition for panel rehearing.  (Doc. No. 52.)  On November 4, 2025, the Sixth Circuit granted

Jacobs's motion and accepted her petition as filed.  (*Id*.)  Thereafter, on December 9, 2025, the Sixth Circuit denied Jacobs's petition for rehearing.  (Doc. No. 53.)

### G.    "Motion for a Response"  (Doc. No. 55)

On February 10, 2026, Jacobs filed a Motion requesting a "response" to Magistrate Judge Armstrong's R&R.  (Doc. No. 55.)  Jacobs requests that her Motion be "reviewed by the Chief Judge of Ohio Federal Court."  (*Id*.)  She complains that she did not receive notification of Court Orders or hearings once Judge Armstrong withdrew her electronic filing privileges.  (*Id*.)  Jacobs argues that "the court did not service the Plaintiff with the orders for hearings: 3-31-25, 4-16-25, and 5-1-25, until 5-13-25, via USPS mail."  (*Id*.)  She claims that "there is a lot of discrimination going on" and "demands the case not be dismissed due to improper service of the Ohio Federal Court."  (*Id*.)  Lastly, Jacobs (again) requests the recusal of Judge Armstrong.  (*Id*.)

The Court will first address Jacobs's Objection to Magistrate Judge Armstrong's R&R, and will then address her Objection to Defendant's Motion for Leave to File Motion to Compel *Instanter*, Motion for Recusal, and "Motion for Response."

## II.    Objections to Report & Recommendation (Doc. No. 47)

In her R&R, Magistrate Judge Armstrong recommends that the instant action be involuntarily dismissed without prejudice for failure to prosecute due to Jacobs's repeated failure to participate in Court proceedings.  (Doc. No. 44.)  Federal Rule of Civil Procedure 41(b) allows for the involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order."  Fed. R. Civ. P. 41(b).  An involuntary dismissal under Rule 41(b) "is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties."  *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.

1999) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984)).  "Determining whether dismissal is the appropriate sanction is a matter within the discretion of the district courts." *Jackson v. Sterilite Corp.*, 2014 WL 5307911 at *2 (N.D. Ohio Oct. 16, 2014) (citing *Wright v. Coca-Cola Bottling Co.*, 41 Fed. Appx 795 (6th Cir. 2002)).  *See also Allen v. Stark State College*, 2019 WL 3387772 at *6 (N.D. Ohio July 26, 2019).

The Court assesses four factors when determining whether dismissal pursuant to Fed. R. Civ. P. 41(b) is appropriate:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Mulbah*, 261 F.3d at 589.  "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (internal citations omitted).  These factors allow the Court to balance its "need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims." *Wingate v. Wal-Mart Stores, Inc.*, 2017 WL 1251093 at *4 (N.D. Ohio Mar. 14, 2017) (quoting *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993) (internal quotation marks omitted)), *adopted by,* 2017 WL 1235006 (N.D. Ohio April 4, 2017).

Here, Judge Armstrong found that all four factors weigh in favor of dismissal.  She concluded that the first factor weighs in favor of dismissal because "Plaintiff has failed to attend two consecutive status hearings and a show cause hearing despite receiving mailed notice of those hearings and despite explicit warnings that failure to attend could result in sanctions." (Doc. No. 44 at PageID# 172.)

14

Judge Armstrong then found that the second factor also weighs in favor of dismissal because Defendant and its counsel "have incurred time and expense in preparing for and attending multiple court conferences that Plaintiff failed to attend." (*Id*.) She found that the third factor was unquestionably satisfied because Jacobs had been repeatedly warned that her failure to appear at court-ordered conferences could lead to dismissal. (*Id*.) And, lastly, Judge Armstrong found that the fourth factor weighs in favor of dismissal because "no sanction short of dismissal would protect the integrity of the pretrial process." (*Id*. at PageID# 173.) However, Judge Armstrong concluded that the dismissal should be without prejudice, in light of the fact that Jacobs "is proceeding *pro se* and ... has, by and large, actively participated in the case." (*Id*. at PageID# 174.)

In her Objection, Jacobs fails to specifically address any of the four *Mulbah* factors. (Doc. No. 47.) Rather, Jacobs argues generally that Judge Armstrong is retaliating against her and treating her unfairly. (*Id*.) Jacobs also asserts that she never received notification of either the March 31, 2025 status conference, the April 16, 2025 rescheduled status conference, or the May 1, 2025 Show Cause Hearing/Discovery Conference. (*Id*.)

The Court finds as follows. While Jacobs does not specifically reference any of the four *Mulbah* factors, the Court liberally construes her argument that she never received notification of the March 31, April 16 and/or May 1, 2025 Conferences/Hearings as addressing the first *Mulbah* factor. In other words, the Court interprets Jacobs's assertion that she never received notification of these conferences as an argument that her failure to attend these conferences was not the product of willfulness, bad faith, and/or fault.

As an initial matter, the Court rejects Jacobs's argument that she never received notification of the March 31, 2025 status conference. As noted *supra,* Judge Armstrong set the March 31, 2025

status conference in her CMC Order, which was issued on September 5, 2024 and mailed to Jacobs at her Scottsbluff, NE address on that date.  (Doc. No. 12.)  The docket reflects that this mailing was not returned undeliverable and, therefore, the Court presumes that Jacobs received it.[5]  However, as Judge Armstrong noted, the Zoom link sent by the Court to Jacobs for this conference inadvertently provided that the date of the conference was *May* 31, 2025.  *See* Non-Doc. Order dated March 31, 2025.  Although Defendant received the same Zoom link and nonetheless knew that the conference was, in fact, scheduled for *March* 31, 2025 (as set forth in the CMC Order), the Court recognizes (as did Judge Armstrong) that this typographical error in the Zoom link email may have caused confusion.  The Court therefore concludes that Jacobs's failure to attend the March 31, 2025 Zoom status conference was not necessarily due to willfulness, bad faith, or fault.

Regarding Jacobs's failure to attend either the April 16, 2025 status conference or the May 1, 2025 Show Cause Hearing/Discovery Conference, it now appears that Jacobs may not have received timely notification of these conferences.  As discussed above, when Jacobs filed her Complaint, she provided the Scottsbluff, NE address as her mailing address. Prior to the issuance of Judge Armstrong's R&R, Jacobs did not, at any time, file a Notice of Address Change on the docket or otherwise properly notify this Court that she had a new mailing address.[6]  She did, however, list a new address (i.e., P.O. Box 28192, Kansas City, MO) in the signature blocks of two documents that she filed on March 25, 2025.  (Doc. Nos. 39, 40.)  Judge Armstrong then properly mailed her Orders

---

[5] Service by mail is "complete upon mailing" and is properly made to the party's "last known address." Fed. R. Civ. P. 5(b)(2)(C).

[6] The docket reflects that the first (and only) time that Jacobs filed a Notice of Change of Address was on January 21, 2026.  (Doc. No. 54.) Therein, Jacobs provides a different Kansas City, MO address of P.O. Box 410511, Kansas City, MO 64141.

16

setting the April 16, 2025 and May 1, 2025 conferences to the most recent apparent mailing address this Court had for Jacobs, i.e., her P.O. Box 28192, Kansas City, MO address. However, it now appears that, at some point during the pendency of this litigation, Jacobs again changed addresses at least twice (to her Blue Springs, MO address and more recently to her P.O. Box 410511, Kansas City, MO address).

Based on the above, it appears that Jacobs may not have received timely notification of either the April 16, 2025 status conference or the May 1, 2025 Show Cause Hearing. The Court finds, however, that Jacobs's failure to receive such notification was not due to error or mistake by this Court. Rather, any such failure to receive timely notification of these conferences was entirely due to Jacobs's failure to properly notify this Court of her current address and/or otherwise monitor the docket in this case.

The Sixth Circuit has found that a plaintiff has an affirmative duty to notify the Court of any change in address. *See Barber v. Runyon*, 1994 WL 163765, at \*1 (6th Cir. May 2, 1994) ("If [*pro se* plaintiff's] address changed, he had an affirmative duty to supply the court with notice of any and all changes in his address."); *Watsy v. Richards*, 1987 WL 37151 (6th Cir. 1987) (affirming district court's dismissal of action under Rule 41(b) where the *pro se* plaintiff failed to update the district court of his current address). District courts within this Circuit likewise have repeatedly emphasized that parties have a continuing obligation to notify the court of any changes in address, including parties that are proceeding *pro se*. *See, e.g., Kimble v. Swanton Police Department,* 2025 WL 3645133 at \* 1 (N.D. Ohio Dec. 16, 2025); *Jones v. McConahay*, 2024 WL 4458281 at fn 1 (N.D. Ohio Oct. 10, 2024); *Brown v. City of East Cleveland*, 2018 WL 6329131 at \* 3 (N.D. Ohio Oct. 2, 2018), *adopted by* 2018 WL 6325263 (N.D. Ohio Dec. 4, 2018); *Sanders v. Carro*, 2023 WL 8544228

17

at * 2 (N.D. Ohio Dec. 11, 2023); *Grogg v. Clark*, 2017 WL 123798 at * 1 (E.D. Tenn. Jan. 12, 2017); *Fountain v. Warden, Franklin Medical Center*, 2013 WL 2468361 at * 1 (S.D. Ohio June 7, 2013), *adopted by,* 2013 WL 3467057 (S.D. Ohio July 9, 2013).  Indeed, a plaintiff's failure to supply the Court with an updated address may subject the action to dismissal under Rule 41(b) for failure to prosecute.  *See Fountain*, 2013 WL 2468361 at * 1; *Kosher v. Butler Cnty. Jail*, 2012 WL 4808546, *2 (S.D. Ohio Sept. 9, 2012) ("Without such basic information as a Plaintiff's current address, courts have no recourse but to dismiss a complaint for failure to prosecute."), *adopted by*, 2012 WL 4808473 (S.D. Ohio Oct. 10, 2012); *Walker v. Cognis Oleo Chem., LLC*, 2010 WL 717275 at *1 (S.D. Ohio Feb. 26, 2010).

Here, Jacobs failed to either provide the Court with an updated mailing address or monitor the status of her case. The Court has no way of knowing a litigant's mailing address except by checking the address provided by the litigant and filed on the docket.  Any problems arising from an inability to communicate with Jacobs are directly attributable to Jacobs's failure to update the docket with her current address.  *See Brown*, 2018 WL 6329131 at * 4; *Grogg,* 2017 WL 123798 at * 1; *Kosher*, 2012 WL 4808546 at * 1 ("It is incumbent upon any litigant, including a *pro se* litigant, to keep the Court informed of his or her current address.")

Jacobs appears to suggest that she should be excused from the requirement of updating her current mailing address or otherwise monitoring the status of the docket in this case, because she instructed the Court to serve all Court filings and notices to her via email.  This argument is without merit.  Jacobs is neither empowered nor entitled to unilaterally dictate the manner in which this Court must serve her with Court Orders and Notices.  She has always been, and continues to be, under an affirmative duty to properly and promptly notify this Court of her current mailing address.  The Court

18

recognizes that Jacobs did receive automatic email notifications of all Court filings during the time period that she was granted electronic filing privileges.  However, Jacobs lost the benefit of receiving such automatic email notifications once her electronic filing privileges were withdrawn.  And the Court emphasizes that Jacobs has no one but herself to blame for the loss of her electronic filing privileges (and the automatic email notifications that came along with them).

Nonetheless, the Court is hesitant to find that Jacobs acted willfully or in bad faith.  Giving Jacobs every possible benefit of the doubt, the Court recognizes that she may not have fully understood that the withdrawal of her electronic filing privileges meant that she would no longer receive automatic email notifications of Court filings.  Certainly, Jacobs nonetheless had an independent and affirmative obligation to monitor the status of her case.  But, out of an abundance of caution and in light of her *pro se* status, the Court is not inclined to find under the circumstances presented that she engaged in contumacious conduct by failing to attend the April 16, 2025 conference and/or May 1, 2025 hearing.

Thus, the Court finds that the first *Mulbah* factor does not weigh in favor of dismissal.  As for the second and third factors, Jacobs does not challenge Judge Armstrong's findings that these factors weigh in favor of dismissal.  Therefore, and in the absence of any meaningful opposition from Jacobs, the Court finds that the second and third *Mulbah* factors weigh in favor of dismissal.

This leaves the fourth *Mulbah* factor, i.e., whether less drastic sanctions were imposed or considered before dismissal was ordered.  *Mulbah,* 261 F.3d at 589.  Regarding this factor, the Sixth Circuit has indicated that "'the sanction of dismissal is appropriate only if the [party's] actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process.'"  *Id*. at 594 (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)).  After

careful consideration, the Court declines to find that this factor weighs in favor of dismissal. Given Jacobs's *pro se* status, and the potential confusion caused by the typographical error in the Zoom link and the withdrawal of her electronic filing privileges, the Court will not dismiss the instant action at this time.

The Court will, however, take this opportunity to advise and remind Jacobs of the following. First, the Court reminds Jacobs that, although she is proceeding *pro se*, she is responsible for understanding and following: (1) all Court Orders issued by Magistrate Judge Armstrong and the undersigned (including the requirements of Judge Armstrong's CMC Order (Doc. No. 12)); (2) the Local Rules for the Northern District of Ohio, including Local Rule 37.1; and (3) the Federal Rules of Civil Procedure.

Second, the Court hereby orders that Jacobs is required to timely appear for, and participate in, all scheduled Court proceedings as directed by Magistrate Judge Armstrong and/or the undersigned. If Jacobs is confused or uncertain about the time or date of any scheduled conference, she has the affirmative duty to timely file a motion on the docket seeking clarification.

Third, as noted repeatedly above, the Court hereby reminds Jacob that she has the affirmative duty and responsibility to notify this Court of any change in her mailing address by filing a Notice of Address Change on the docket. Although the Court chose in the exercise of its discretion to excuse Jacobs's past failures to do so in this case, the Court makes clear that it will not excuse any future failures by Jacobs to properly and timely notify the Court of changes to her regular mailing address. To be very clear, the Court will mail any Court filings, Orders, notices, etc. to the most recent mailing

address provided to this Court by Jacobs in a properly filed Notice of Address Change.[7] The Court will presume that Jacobs has received any Court filings that are mailed to the most recent mailing address that she has provided on the docket.

Fourth, the Court reminds and advises Jacobs that she is required, like any litigant, to treat Court staff and opposing counsel with civility. The Court notes in particular that, if counsel for Defendant seeks to engage in a meet and confer with Jacobs regarding a discovery dispute as required by Judge Armstrong's CMC Order (Doc. No. 12), Jacobs may not simply refuse to do so. Rather, Jacobs must respond to any such requests with civility and professionalism.

Finally, the Court hereby expressly warns Jacobs that failure to comply with any of the above directives may result in sanctions, including but not limited to dismissal with prejudice.

Accordingly, and for all the reasons set forth above, the Court declines to accept Magistrate Judge Armstrong's R&R (Doc. No. 44) and, therefore, will not dismiss the instant action without prejudice at this time.

### III. Motion to Object to Defendant's Motion for Leave to File Motion to Compel *Instanter* (Doc. No. 48)

As noted above, in her R&R, Magistrate Judge Armstrong denied Defendant's Motion for Leave to File Motion to Compel *Instanter* as moot, in light of her recommendation that the instant action be dismissed without prejudice. (Doc. No. 44 at PageID#s 174-175.) Nonetheless, on May 30, 2025, Jacobs filed a "Motion to Object for Leave to File Motion to Compel *Instanter* filed by the

---

[7] If she so chooses, Jacobs may register to receive a "read only" electronic filing account so that she may access documents in the system and receive electronic notice. However, Jacobs is advised that this is not the same as having electronic filing privileges. Rather, if Jacobs registers to receive a "read only" electronic filing account, she may receive electronic notice of filings in this action but all of her own filings must be completed manually. In addition, even if Jacobs registers to receive a "read only" electronic filing account, she is still required to notify this Court of any changes to her regular mailing address by filing a Notice of Address Change on the docket.

Defendant's Attorneys," in which she argues that Defendant should not be permitted to videotape or audio record her deposition. (Doc. No. 48.)

As Defendant's Motion for Leave to File Motion to Compel *Instanter* was denied as moot, the Court likewise denies as moot Jacobs's "Motion to Object" to Defendant's Motion for Leave. If Defendant subsequently refiles a Motion to Compel (or Motion for Leave to File Motion to Compel), Jacobs may oppose any such motion at that time.

**IV. Motion to Recuse (Doc. No. 49)**

Jacobs filed her fifth Motion to Recuse on June 3, 2025. (Doc. No. 49.) Therein, Jacobs argues that Judge Armstrong is retaliating against her. (*Id*.) She further maintains that Judge Armstrong's animus is demonstrated by the fact that she improperly refused to consider Jacobs's Motion to Compel, but was willing to consider Defendant's Motion for leave to File Motion to Compel *Instanter.* (*Id*.) She requests that Judge Armstrong be immediately removed from the instant action. (*Id*.)

As with her previous four Motions to Recuse, Jacobs does not identify the statutory basis for her request for recusal, nor does she cite any legal authority in support of her Motion. There are two federal statutes that govern recusal. Under 28 U.S.C. § 144, a judge must recuse him or herself when a party files a "timely and sufficient affidavit" alleging "personal bias or prejudice" and where there is a showing of actual bias. Bias or prejudice means "a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not possess ..., or because it is excessive in degree...." *Liteky v. United States*, 510 U.S. 540, 550 (1994). *See also Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006).

Title 28 U.S.C. § 455 requires a judge to "disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned," or when "[s]he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). Section 455 is designed "'to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.'" *Union Planters Bank v. L & J Dev. Co., Inc.*, 115 F.3d 378, 383 (6th Cir. 1997) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)). Under § 455, the ultimate question is whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999). Because the standard is objective, the judge need not recuse him or herself based on the subjective view of a party. *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990).

Under either statute, "[a] judge's prejudice or bias may stem from either personal or extrajudicial sources, or arise during the course of current or prior proceedings." *Burley v. Gagacki,* 834 F.3d 606, 616 (6th Cir. 2016) (citing *Liteky*, 510 U.S. at 555). As the Court noted in its previous Orders, the fact that a litigant disagrees with the legal rulings in the case does not establish that the court's decisions are the product of bias. *Shepard*, 2009 WL 3106554 at *2–3. Moreover, the subjective view of the party involved is not sufficient to support a recusal motion, no matter how strongly that view may be held. *Wheeler*, 875 F.2d at 1251. Recusal is only required when "the probability of actual bias on the part of the judge or decisionmakers is too high to be constitutionally tolerable." *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (2016)). As the Sixth Circuit has noted, a judge is "presumed to be impartial, and the party seeking

23

disqualification 'bears the substantial burden of proving otherwise.'" *Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007).

For the following reasons, the Court finds that Jacobs has not shown that recusal is warranted under 28 U.S.C. § 144 or 28 U.S.C. § 455. First, the Court finds that Jacobs is not entitled to recusal under § 144 because she failed to file a "timely and sufficient affidavit" in support of her Motion. *See Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003)(noting that "[r]ecusal is never granted without the affidavit" required by § 144). The Court further finds that Jacob's *pro se* Motion does not qualify as an "affidavit" for purposes of § 144 because it is not notarized. *See LeVay v. Morken*, 590 F.Supp.3d 1037, 1042 (E.D. Mich. 2022).

Second, the Court finds that Jacobs has not demonstrated that recusal is warranted under § 455. As an initial matter, the law is very clear that Jacobs's disagreement with Judge Armstrong's legal rulings regarding the parties' respective Motions to Compel is not sufficient, standing alone, to establish that the court's decisions are the product of bias. *Shepard*, 2009 WL 3106554 at *2–3. Nor is Jacobs's subjective opinion that Judge Armstrong "has no respect for the Plaintiff because she is a *pro-se* African American litigant" (Doc. No. 49 at PageID# 199) sufficient to support a request for recusal, no matter how strongly that view may be held. *Wheeler*, 875 F.2d at 1251.

In addition, the Court again finds that Judge Armstrong's decision to deny Jacobs's Motion to Compel without prejudice was entirely reasonable. As the Court previously explained in its February 28, 2025 Memorandum Opinion & Order:

> Judge Armstrong correctly notes that her CMC Order expressly provides (in bold lettering) that discovery disputes are governed by Local Rule 37.1 and that "the court interprets any certification pursuant to LR 37.1(a)(1) will mean that the party seeking disputed information has actually talked to the opposing party." (Doc. No. 12 at PageID# 55.) Judge Armstrong also correctly found that Jacobs failed, entirely, to comply with the CMC Order. Jacobs did not certify that she had "actually talked to"

24

defense counsel, nor did she follow any of the specific requirements of Local Rule 37.1(a).  Thus, the Court finds no evidence that Judge Armstrong's denial without prejudice of Jacobs' Motion to Compel was based on anything other than Jacobs' clear failure to comply with the CMC Order that was entered in this case and is applicable to all parties, i.e., both Jacobs and Defendant.

(Doc. No. 37 at PageID# 127) (footnote omitted).  The Court rejects Jacobs's argument that Judge Armstrong showed impermissible bias because she "wanted to address" Defendant's Motion to Compel but refused to consider Jacobs's Motion to Compel.  (Doc. No. 49 at PageID# 199.)  As set forth above, Judge Armstrong did not, in fact, address Defendant's Motion to Compel.  Rather, she denied it as moot.  Additionally, unlike Jacobs, Defendant filed a Motion for Leave to file Motion to Compel, in which it explained that counsel for Defendant had attempted to comply with Judge Armstrong's CMC Order by engaging in a meet and confer with Jacobs before filing the Motion -- but that Jacobs had refused to respond. Thus, the Court rejects Jacobs's argument that Judge Armstrong's handling of the parties' respective Motions to Compel shows bias or prejudice.

Accordingly, the Court finds that Jacobs has not carried her "substantial burden" of demonstrating that recusal of Magistrate Judge Armstrong is warranted under § 455.  Rather, and for all the reasons set forth above, the Court finds that a reasonable, objective person, knowing all of the circumstances, would not have questioned Magistrate Judge Armstrong's impartiality.  *Hartsel*, 199 F.3d at 820.   Jacobs's fifth Motion for Recusal (Doc. No. 49) is, therefore, denied.

## IV.    "Motion for a Response" (Doc. No. 55)

Lastly, on February 10, 2026, Jacobs filed a "Motion for a Response."  (Doc. No. 55.)  Therein, Jacobs "requests a response" to Magistrate Judge Armstrong's R&R and argues, again and at length, that she did not receive copies of Judge Armstrong's Orders setting the conferences for March 31, April 16, and/or May 1, 2025.  (*Id*.)  Lastly, Jacobs "demands [that] the case not be

dismissed due to improper service of the Ohio Federal Court" and that "the recusal of Judge [Armstrong] be granted." (*Id.*)

This Order fully resolves Jacobs's Objection to the R&R and her fifth Motion to Recuse, as set forth above. Thus, Jacobs's Motion for a Response (Doc. No. 55) is denied as moot.

## V.    Conclusion

For the following reasons, the Court declines to adopt the R&R. (Doc. No. 44.) Plaintiff's Objection to Defendant's Motion for Leave to File Motion to Compel *Instanter* (Doc. No. 48) is denied as moot. Plaintiff's Motion for Recusal (Doc. No. 49) is denied and her Motion for a Response (Doc. No. 55 ) is denied as moot.[8]

**IT IS SO ORDERED.**

    _s/Pamela A. Barker_____
    PAMELA A. BARKER
Date:  March 6, 2026    U. S. DISTRICT JUDGE

---

[8] The Court notes that, in the captions of her Objection to the R&R (Doc. No. 47), fifth Motion to Recuse (Doc. No. 49), and "Motion for a Response" (Doc. No. 55), Jacobs requests that these filings be "reviewed by the Chief Judge of Ohio Northern Federal Court." Jacobs's requests are denied. This matter is assigned to the undersigned. Jacobs may not request or demand that certain motions be ruled on by Chief Judge Lioi, or any other district judge in this District.